IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Collins, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:16-cv-822 |
| | ) | |
| DOE RUN RESOURCES CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NON-MISSOURI DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiffs submit this memorandum of law in opposition to the motion to dismiss for lack of personal jurisdiction filed by Defendants The Renco Group, Inc., Renco Holdings, Inc., and Ira L. Rennert (hereinafter the "Non-Missouri Defendants").

Plaintiffs' suits allege that over sixteen hundred Peruvian children living near Defendants' lead smelter in La Oroya, Peru have been the victims of corporate malfeasance originating from New York, New York and St. Louis, Missouri, and, as a result, have been exposed to devastatingly harmful levels of lead since birth. devastatingly harmful levels of lead since birth. Plaintiffs further allege that the Defendants, acting in concert and through Missouri entities, purposefully syphoned off and removed funds that were intended to be used to make environmental upgrades at the La Oroya Complex, and instead, used them for their own benefit at the expense of the health of the Plaintiffs There are five Missouri Defendants subject to general and specific jurisdiction in this forum: Doe Run Resources Corporation, D.R. Acquisition Corp., Marvin K. Kaiser, Theodore P. Fox III., Jerry Pyatt, and Jeffrey L. Zelms (hereinafter the "Missouri Defendants"). Three additional Defendants, The Renco Group, Inc.,

Renco Holdings, Inc., and Ira L. Rennert, (the "Non-Missouri Defendants"), New York entities, have filed a motion to dismiss for lack of personal jurisdiction based on the Supreme Court's recent rulings in *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017) ("*BNSF*") and *Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773 (2017) ("*BMS*").

On June 19, 2017, the United States Supreme Court issued its decision in *Bristol-Myers Squibb Co. v. Superior Court*, __U.S.__, 137 S. Ct. 1773, 2017 WL 2621322, 2017 U.S. LEXIS 3873 (2017). The case concerned a lawsuit arising out of the company's pharmaceutical drug Plavix, and the holding addressed specific personal jurisdiction. Most significantly, the Court in *BMS* rejected the invitation to adopt the argument made by Defendants in the present matter: nowhere did the Court did not limit the affiliation between the forum and the underlying controversy with causation in fact.

To the contrary, the Court in *BMS* reaffirmed that jurisdiction over a non-forum defendant does <u>not</u> turn upon the location of a plaintiff <u>nor</u> his or her forum-related actions, but does turn on an activity or occurrence by a *defendant* in the forum state that causes or is related to a plaintiff's cause of action. This is precisely what the instant Plaintiffs allege in their pleadings that include, *inter alia*, forum defendants engaging in relevant acts where non-forum defendants' actions facilitate the daily operations and exert complete control over the forum defendants.

The Court in *BMS* chose not to shift the focus of the jurisdictional inquiry from a defendant's activities to those of a plaintiff. Thus, a proper jurisdictional analysis cannot be limited, as argued by Defendants', to a plaintiff's contacts with a forum state, including state of citizenship or state where injury occurred. Rather, the inquiry remains heavily fact-based and focusses upon defendant(s) contacts with the forum state. Plaintiffs' Complaints do just that.

Applying *BMS* to the facts at issue here, it is clear that this Court has jurisdiction over the moving Non-Missouri Defendants. Plaintiffs have properly alleged a concert of action or agency theory of jurisdiction between different arms of the same business group, one of which is the 100% shareholder of Doe Run Peru - Defendant Doe Run Resources Corporation, a Missouri entity that is within this Court's jurisdiction.

 Further, as outlined in further detail below, there are significant links between the Non-Missouri Defendants and the State of Missouri, sufficient, at this stage, to demonstrate that this Court has personal jurisdiction over the Non-Missouri Defendants.

Although Bristol-Meyers Squibb urged the U.S. Supreme Court to adopt the same "but for" causation standard that the Non-Missouri Defendants has asked this Court to adopt, the Supreme Court did not do so. Instead, in rejecting the California court's theory of specific personal jurisdiction, the Supreme Court simply restated and applied the very same traditional principles and long-settled case law on jurisdiction. Applying those principles here that this Court has jurisdiction over each of the Non-Missouri Defendants. Their motion to dismiss should be denied.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS .......................................................................................... iv

TABLE OF AUTHORITIES ..................................................................................... v

FACTUAL BACKGROUND ..................................................................................... 1

ARGUMENT .............................................................................................................. 1

   I.   STANDARD OF REVIEW GOVERNING A RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ................................................. 1

   II.  DEFENDANTS HAVE WAIVED THEIR OBJECTIONS TO PERSONAL JURISDICTION ................................................................................................... 2

   III. THIS COURT HAS PERSONAL JURISDICTION OVER THE NON-MISSOURI DEFENDANTS .................................................................................................... 9

     A. The *BMS* Decision ....................................................................................... 9

     B. Missouri's Specific Jurisdiction Test Remains Good Law and Binding Precedent after *BMS* ...................................................................................... 10

     C. Jurisdiction Over the Non-Missouri Defendants Satisfies Missouri's Long-Arm Statute 15

     D. *BMS* Warrants Denial of Defendants' Motion .......................................... 20

     E. The Alter Ego Theory Imposes Jurisdiction Over the Non-Missouri Defendants ....... 21

CONCLUSION .......................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alger v. Hayes*, 452 F.2d 841 (8th Cir. 1972) ............................................................................... 2

*BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 429 F. Supp. 2d 1179 (E.D. Mo. 2006) ................... 18

*Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) ............. passim

*Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227 (Mo. 2010) .............................. 11, 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) .......... 11

*Camelot Carpets, Ltd. v. Metro Distributing Co.*, 607 S.W.2d 746 (Mo. App. E.D. 1980) ........ 22

*Cavaness v. Kruetz*, 1987 WL 8053 (W.D. Mo. Mar. 6, 1987) .................................................... 16

*Cepia, LLC v. Universal Pictures Visual Programming Ltd.*, 177 F.Supp.3d 1129 (E.D. Mo. 2016) ............................................................................................................................................ 16

*Clockwork IP, LLC v. Clearview Plumbing & Heating Ltd.*, 127 F. Supp. 3d 1020 (E.D. Mo. 2015) ............................................................................................................................................ 21

*Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273 (Mo. App. E.D. 1986) .................................... 22

*Cortina v. Bristol-Myers Squibb Company, et al.*, 2017 WL 2793808 (N.D. Cal. Jun. 27, 2017) 20

*Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975 (8th Cir. 2015) ....................... 10, 13

*Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ........................................... 10

*Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384 (8th Cir. 1991) .......................... 1

*Downing v. Goldman Phipps, PLLC*, 764 F.3d 906 (8th Cir. 2014) ............................................ 18

*Dubose v. Bristol-Myers Squibb Co.*, 2017 U.S. Dist. LEXIS 99504, 2017 WL 2775034 (N.D.Cal. June 27, 2017) ........................................................................................................... 20

*Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642 (8th Cir. 2003) ........................................... 1, 21

*Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 WL 2199967 (E.D. Mo. June 7, 2011) ........................................................................................................................................... 15

*Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816 (8th Cir. 2014) ........................................... 2

*Fleischli v. North Pole US,* LLC, 2013 WL 1965120 (E.D. Mo. May 10, 2013) ................. 17, 18

*Floyd v. Kellogg Sales Co.*, 841 F.2d 226 (8th Cir. 1988)............................................................ 3

*Garrett v. Albright*, 2008 WL 920310 (4:06-CV-4137-NKL) (W.D. Mo. Apr. 1, 2008) ........... 3, 4

*H&R Block Tax Servs. LLC v. Acevedo-Lopez*, 2014 WL 12631869 (W.D. Mo. Mar. 5, 2014)... 3, 4, 5, 7

*In re Genetically Modified Rice Litigation*, 576 F.Supp.2d 1063 (E.D. Mo. 2008)..... 11, 18, 21

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................................................... 9, 11

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).... 10, 11

*Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir.1990)............................................ 3, 7

*Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634 (8th Cir. 1975) ................................................................................................................................................ 21

*Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ...................................... 1

*MAK Automation, Inc. v. G.C. Evans Sales & Mfg. Co., Inc.*, 2008 WL 18578 (E.D. Mo. Jan 18, 2008) ........................................................................................................................... 3, 4, 7

*Marquest Med. Prod. v. EMDE Corp.*, 496 F.Supp. 1242 (D.Colo. 1980)............................. 3, 7

*Naegler v. Nissan Motor Co.*, 835 F. Supp. 1152 (W.D. Mo. 1993)...................................... 16, 17

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165; 60 S.Ct. 153 ; 84 L.Ed. 167 (1939) 2

*Precision Constr. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114 (8th Cir. (E.D. Mo.) 1985) ... 17, 18

*Romak USA, Inc. v. Rich*, 384 F.3d 979 (W.D. Mo. 2004) .......................................... 1, 11, 17, 18

*St. Louis Fed. Sav. & Loan v. Silverado Banking*, 626 F. Supp. 379 (E.D. Mo. 1986)........ 17

*State ex rel. Metal Serv. Cntr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325 (Mo. En Banc 1984) ............................................................................................................................................ 15

*TLC Vision (USA) Corp. v. Freeman*, 2013 U.S. Dist. LEXIS 70919 (E.D. Mo. May 20, 2013. 4, 6, 7

*Van Praag v. Columbia Classics Co.*, 849 F.2d 1106 (8th Cir. 1988).......................................... 3

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589 (E.D. Mo. 2011) 1, 21

*Walden v. Fiore*, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) ........................................................ 11

*Watlow Elec. Mfg. Co. v. Sam Dick Indus., Inc.*, 734 S.W.2d 295 (Mo. Ct. App. 1987) ........... 19

*Willnerd v First National Nebraska, Inc.*, 558 F.3d 770 (8th Cir. 2009) ...................................... 1

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ....................................... 14, 21

*Yeldell v. Tutt*, 913 F.2d 533 (8th Cir. 1990) ................................................................. 2, 3, 7, 8

**Statutes**
MO. REV. STAT. §506.500.1 ................................................................................................. 15
**Rules**
FED. R. CIV. P.12(a), (b), (g)-(h) ........................................................................................... 2

## FACTUAL BACKGROUND

This litigation arises from the emission of toxic substances from the La Oroya Metallurgical Complex in La Oroya, Peru (the Complex). These toxic emissions have severely damaged and injured the Plaintiffs who are all minors who currently reside or have resided in La Oroya. At the direction of the Non-Missouri Defendants located in New York, who maintained daily ownership and control of St. Louis and Peru operations, decisions were made in Missouri that directly injured Plaintiffs. At all times, Defendant Ira Rennert, as owner of the Renco Companies and Doe Run Companies, has been at the top of the ownership chain of the La Oroya Complex. More importantly, Rennert, through the Renco Defendants, have consistently controlled the operation of the La Oroya Complex.

## ARGUMENT

### I.   STANDARD OF REVIEW GOVERNING A RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

As Defendants' cited authorities acknowledge, withstanding a motion to dismiss requires only a *prima facie* showing of jurisdiction—with the evidence viewed in the light most favorable to the non-movant. *See, e.g.*, *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (E.D. Mo. 2011); *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (W.D. Mo. 2004). The United States Supreme Court has clarified that the evidentiary threshold to make the required showing is low: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lewis v. Casey*, 518 U.S. 343, 358, 116 S.Ct. 2174, 2183, 135 L.Ed.2d 606 (1996).

The Eighth Circuit likewise has established that to defeat a motion to dismiss for lack of personal jurisdiction, the nonmovant need only make a prima facie showing of jurisdiction. *Epps*

*v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).[1] While the burden is on the party seeking to establish personal jurisdiction, jurisdiction need not be proven by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Id*. The court takes as true all the nonmovant's allegations with respect to jurisdictional issues and resolves all factual disputes in favor of the nonmovant. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). The prima facie showing is tested not on the pleadings alone, but by affidavits and exhibits opposing the motion. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (Perry, J.).

## II.   DEFENDANTS HAVE WAIVED THEIR OBJECTIONS TO PERSONAL JURISDICTION

Defendants ignore the indisputable rule that objections to personal jurisdiction are lost when a defendant either 1) fails to properly raise the objection under Rule 12, or 2) even when properly raised under Rule 12, by consent through conduct. Under the Federal Rules, a defendant must preserve its objection to personal jurisdiction in one of two ways: by pleading it as a defense in its answer, or by filing a Rule 12(b) motion to dismiss *before* answering, and that the objection is waived by failing to do so. Fed. R. Civ. P.12(a), (b), (g)-(h); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168; 60 S.Ct. 153, 155; 84 L.Ed. 167 (1939).

It is well-settled in the Eighth Circuit that the defense of lack of personal jurisdiction is waived if it is neither raised by motion before the answer or asserted in a responsive pleading. *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (providing "no more than a bald assertion in their answer that the court lacked personal jurisdiction over them," participating in discovery, filing motions, and other conduct "all without raising the issue of personal jurisdiction or

---

[1] Prima facie is defined as requiring minimal evidence. *Willnerd v First National Nebraska, Inc.*, 558 F.3d 770, 778 (8th Cir. 2009).

requesting a ruling on it . . . delay[ed] consideration of this threshold issue[,] manifest[ing] an intent to submit to the court's jurisdiction.").[2]

Additionally, because Rule 12 is intended to avoid delay and simplify federal court proceedings, courts recognize that Rule 12 "sets only the outer limits of waiver; it does not preclude waiver by implication." *Yeldell*, 913 F.2d at 539; *quoting Marquest Med. Prod. v. EMDE Corp.*, 496 F.Supp. 1242, 1245 n.1 (D.Colo. 1980) (personal jurisdiction objection waived when filed "six to ten weeks" after complaint), *quoting* C. Wright & A. Miller, 5A *Federal Practice and Procedure* § 1342, 162 (2d ed. 1990). Accordingly, the Eighth Circuit unequivocally and repeatedly has recognized that a party's conduct may waive objections to personal jurisdiction. *See, e.g.*, *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir.1990); *Van Praag v. Columbia Classics Co.*, 849 F.2d 1106, 1109 (8th Cir. 1988). In fact, even if the personal jurisdiction defense is properly and timely raised in an answer or preliminary motion to dismiss, a defendant that then avails itself of the court's jurisdiction before pursuing the jurisdictional challenge to disposition is deemed to have consented to jurisdiction through its conduct and waives its personal jurisdiction objections, despite otherwise having complied with Rule 12. *Floyd v. Kellogg Sales Co.*, 841 F.2d 226, 230 (8th Cir. 1988).[3]

---

[2] *See, e.g.*, *Alger v. Hayes*, 452 F.2d 841, 844 (8th Cir. 1972) (statement in answer that court lacked jurisdiction without specifying whether challenge was to subject-matter or personal jurisdiction held too ambiguous to preserve personal jurisdiction defense, noting "defendant did not assert any objection to jurisdiction over his person in the answer filed."); *see also, e.g.*, *TLC Vision (USA) Corp. v. Freeman*, 2013 WL 2181267, *5-6 (E.D. Mo. May 20, 2013) (No. 4:12-CV-01855-ERW) (not designated for publication) (personal jurisdiction should have been raised and disposed before other matters: having appeared to contest TRO motion, defendants could not later assert personal jurisdiction defense).

[3] *See also*, *Garrett v. Albright*, 2008 WL 920310, *3 (No. 4:06-CV-4137-NKL) (W.D. Mo. Apr. 1, 2008) (not designated for publication) (if party appears for any "purpose that goes beyond challenging jurisdiction of the court over . . . the parties, the appearance will be deemed general,

The rule of waiver by consent through conduct, or availment of the court's procedures, is so well-settled that even where a defendant asserts lack of personal jurisdiction in an Answer as their first defensive move, by then making an appearance *for any other purpose* without raising the issue of personal jurisdiction, it waives the right to assert the defense. *H&R Block Tax Servs. LLC v. Acevedo-Lopez*, 2014 WL 12631869, *5 (W.D. Mo. Mar. 5, 2014); *Garrett v. Albright*, 2008 WL 920310, *3 (W.D. Mo. Apr. 1, 2008). Under Missouri law, examples of actions that waive the defense include participating in Rule 16 conferences or discovery conferences; serving discovery on the plaintiff; completing discovery; briefing motions related to the application of Missouri law; participating in mediation; asking the court to extend discovery deadlines; asking the court to amend case management orders; or simply filing documents. *H&R Block*, 2014 WL 12631869 at *5; *MAK Automation, Inc. v. G.C. Evans Sales & Mfg. Co., Inc.*, 2008 WL 18578, *3 (E.D. Mo. Jan 18, 2008)*; TLC Vision (USA) Corp. v. Freeman*, 2013 U.S. Dist. LEXIS 70919, at *7 (E.D. Mo. May 20, 2013; *Garrett,* 2008 WL 920310 at *3.

The *H&R Block* decision is particularly instructive in establishing conduct that waives even a properly-raised personal jurisdiction objection:

---

and all jurisdictional challenges will be deemed waived") (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) and *Nationwide Eng'g & Ctrl Sys., Inc. v. Thomas*, 837 F.2d 345, 347 (8th Cir. 1998)); *MAK Automation, Inc. v. G.C. Evans Sales & Mfg. Co., Inc.*, 2008 WL 185787, *3 (E.D. Mo. Jan 18, 2008) (No. 4:06-CV-1579-MLM) (not designated for publication); *H&R Block Tax Servs. LLC v. Acevedo-Lopez*, 2014 WL 12631869, *5 (W.D. Mo. Mar. 5, 2014) (No. 12-1320-CV-W-SOW) (not designated for publication) (despite personal jurisdiction objection, motion for extension of time, appearance entered without specifying that it was solely to contest jurisdiction, filing documents, participating in proceedings other than to contest personal jurisdiction, submitting to scheduling order, engaging in discovery, and eleven-month delay in filing dispositive motion based on personal jurisdiction "unequivocally demonstrate [defendant's] request for relief beyond challenging jurisdiction," waiving ability to challenge it); *TLC Vision (USA) Corp. v. Freeman*, 2013 WL 2181267, *5-6 E.D. Mo. May 20, 2013) (No. 4:12-CV-01855-ERW) (not designated for publication).

> [Defendant] did assert in his Answer and Amended Answer the affirmative defense of lack of personal jurisdiction. However, [defendant] has raised no special or limited appearance to contest this Court's exercise of personal jurisdiction. *See Yeldell*, 913 F.2d at 539 ("Asserting a jurisdictional defect in the answer [does] not preserve the defense in perpetuity."); *Knowlton*, 900 F.2d at 1199. In his first appearance, [defendant] moved for an extension of time . . . [his counsel later] entered an appearance, without ever indicating that he was doing so for the sole purpose of contesting jurisdiction. *See Knowlton*, 900 F.2d at 1199; *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 347 (8th Cir. 1988). Furthermore, [defendant] has availed himself of the court's procedures by filing documents and participating in proceedings, all without raising the issue of personal jurisdiction.  More specifically, [defendant] has argued against [plaintiff's motion, filed counterclaims,] agreed to a Scheduling Order . . . sought extensions of time to file various documents; engaged in . . . discovery . . . These actions unequivocally demonstrate [defendant's] request for relief beyond challenging jurisdiction; therefore, [defendant] has waived his ability to challenge jurisdiction.

*H&R Block*, 2014 WL 12631869 at *5. The *H&R Block* defendant's conduct occurred over the course of eleven *months*, by contrast to three years of Defendants' conduct during this litigation.

Here, Defendants did not properly raise personal jurisdiction defenses under Rule 12: they were not in their answer or preliminary motion to dismiss, thus they have waived their objection and further consideration of this issue is unnecessary.[4] Had Defendants initially complied with Rule 12—which they did not—they subsequently waived the defense by litigating this case for several years before pursuing the issue of personal jurisdiction.

### 1. Defendants Ira Rennert and Renco surrendered their personal jurisdiction defense by failing to comply with the requirements of Rule 12.

Defendants Rennert and Renco undeniably waived their personal jurisdiction defense, and their current Motion to Dismiss should be denied for failure to comply with Rule 12.

---

[4] Plaintiffs' waiver argument applies to the lead case, 15-1704, in which much litigation, including Defendant's recent Motion to Dismiss based on international comity, where some of Mr. Rennert's actions were described in detail, has occurred over the last three years.  Waiver also applies in  Case Nos. 16-cv-00059; 16-cv-00060; 16-cv-00061; 16-cv-000634; 17-cv-00787; 17-cv-00790; and 17-cv-00797.  Defendants have answered plaintiffs' complaint and failed to raise personal jurisdiction as a defense in these cases.

5

What makes Defendants' attempt to do so now—three years after first appearing in this case—even more astonishing is that Non-Missouri Defendants' Answers to Plaintiffs' original Complaint illustrate the depth of the duplicitousness implicated by their instant Rule 12(b)(2) motion to dismiss. When they eventually served their Answers—after litigating this case for several years—they *still* did not object to personal jurisdiction. (*See Collins v. DRRC*, Case No. 16-00059-RWS, Doc. 24, Renco Answer; Doc. 26, Rennert Answer.) Instead, they continued to litigate this case for some time before filing the instant motion. Even without such a significant passage of time, the simple fact is that Defendants did not raise personal jurisdiction in their first defensive pleading, and therefore waived their privilege of the defense. Their Motion to Dismiss based on Rule 12(b)(6) must be denied.

### 2. Defendants Ira Rennert and Renco waived the personal jurisdiction defense by availing themselves of the Court's jurisdiction.

Because Defendants Rennert and Renco did not comply with Rule 12, the Court need not consider whether Defendants also waived the defenses by availing themselves of the Court's jurisdiction on other matters: this Honorable Court has held that where:

> Defendants failed to comply with the spirit of Rule 12, or its literal requirements[. . . whether] surrender of their personal immunity is conceived negatively as waiver or positively as consent through conduct, the Court finds the privilege of these defenses lost. Furthermore, the Court need not reach [Defendants'] additional arguments related to . . . personal jurisdiction, as the Motions are properly denied on the grounds discussed above.

*TLC Vision*, 2013 U.S. Dist. LEXIS 70919 at *23-24. It cannot be disputed that Defendants Rennert and Renco participated in litigating this case for several years. At no time during numerous pleadings and proceedings, did Defendants challenge personal jurisdiction.

Moreover, throughout the more than two years during which Defendants' Motion to Transfer Venue was pending, Defendants continued to avail themselves of the benefits of jurisdiction in Missouri by filing and participating in a number of court proceedings before

this Court. Most notably, Defendants filed a Motion to Substitute Plaintiffs' Next Friend (Dkt. 92) which this Court denied (Dkt. 171), and most recently, a Motion to Dismiss based on the doctrine of international comity (Dkt. 135), in which Defendants again failed to raise a personal jurisdiction defense.

In the time that this case has been before this Court, fourteen attorneys have entered appearances on behalf of, and are currently representing, these Defendants in this action. Not one of these sixteen attorneys' appearances provided that it was for the sole purpose of challenging personal jurisdiction. (Doc. 5, 12, 13, 14, 27, 114, 116, 121, 123, 124, 125, 130, 156, 193, 194, and 195). During this time, Defendants Rennert and Renco have engaged in extensive litigation of which this Court is well aware—including participating in several hearings or status conferences with the Court, as well as a Rule 16 conference. Not once have Defendants raised the issue of personal jurisdiction in any of their pleadings or verbally during hearings before this Honorable Court.

Furthermore, Defendants have participated in extensive discovery, including producing million pages of documents in discovery, taking the deposition of Plaintiffs' next friend Father Christopher Collins, serving a third-party subpoena on Saint Louis University and Dr. Fernando Serrano. They have also been served with hundreds of plaintiff fact sheets, medical records, and school records completed by Plaintiffs. *Knowlton*, 900 F.2d at 1199 (objections to personal jurisdictions may be waived by not asserting them in a timely manner); *TLC Vision*, 2013 WL 2181267 at *7 ("although Defendants generally indicated that motions to dismiss…would be forthcoming, the two months that elapsed, and the litigation that transpired during these two months does not argue favorably for dismissal."); *MAK Automation*, 2008 WL 185787 at *3 (defendant did not file dispositive personal jurisdiction motion until matter had been pending for

7

approximately nine months); *see also H&R Block*, 2014 WL 12631869 at *5 (eleven months);
*Yeldell*, 913 F.2d at 539; *quoting Marquest*, 496 F.Supp. at 1245 n.1 ("six to ten weeks"). Just
*two months* between the filing of the complaint and a motion challenging personal jurisdiction is
sufficient to waive that defense. *TLC Vision*, 2013 WL 2181267 at *7.

Here, Defendants' having litigated this case for several years before challenging
personal jurisdiction unquestionably has waived this privilege. Prior to filing the instant motion,
Defendants made the following defensive moves, each without providing that it was a special
appearance or objecting to personal jurisdiction:

- On February 24, 2016, counsel for the Non-Missouri Defendants attended a Rule 16 Status Conference (Dkt. 44);

- On May 17, 2016, July 13, 2016, September 23, 2016, January 17, 2017, March 23, 2017, May 23, 2017, and June 29, 2017, counsel for the Non-Missouri Defendants attended a status conference in which the Court and the parties addressed a number of discovery and case management issues. (Dkts. 55, 62, 79, 90, 117, 148, and 167). *Cf. Nationwide Eng'g*, 837 F.2d at 347 (appearance for any purpose beyond challenging jurisdiction "will be considered general, and all jurisdictional challenges will be deemed waived"); *H&R Block*, 2014 WL 12631869, *5 (among other actions, submitting to scheduling order and engaging in discovery waived ability to challenge personal jurisdiction);

- On June 1, 2017, Defendants filed a Motion to Stay Discovery pending the resolution of Defendants' motion to dismiss pursuant to the doctrine of international comity (Dkt. 154)

- Serving disclosures, answering interrogatories, and responding to requests for admissions and production;

Not one of these pleadings mentioned an objection to personal jurisdiction. Pursuant to
Rule 12(h) of the Federal Rules of Civil Procedure, the Non-Missouri Defendants voluntarily
appeared and waived any challenges it may have had to personal jurisdiction.[5] Accordingly,

---

[5] According to the Eighth Circuit Court of Appeals, Rule 12(h) of the Federal Rules of Civil
Procedure "sets only the outer limits of waiver; it does not preclude waiver by implication." *See
Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990).

regardless of which of these filings constituted their "first defensive move," Defendants' failure to raise personal jurisdiction in any of these filings waived the defense.

## III.     THIS COURT HAS PERSONAL JURISDICTION OVER THE NON-MISSOURI DEFENDANTS

### A.  The *BMS* Decision

In *BMS*, a large group of plaintiffs sought to sue the Bristol-Myers Squibb pharmaceutical company (which was not a California citizen) in California state court on claims arising out of their use of the drug Plavix, even though most of the plaintiffs had no meaningful connection to California and had not suffered injury there. 137 S. Ct. at 1777-78. The California Supreme Court upheld the out-of-state plaintiffs' assertion of specific personal jurisdiction under a "sliding scale" approach: Because (according to that court), Bristol-Myers Squibb had "extensive" contacts with California, the state court could "exercise . . . specific jurisdiction 'based on a less direct connection between [Bristol-Myers Squibb's] forum activities and plaintiffs' claims than might otherwise be required'"—even though the putatively "extensive" contacts were unrelated to the claims at issue. *Id.* at 1778 (citation omitted).

The U.S. Supreme Court reversed, rejecting California's "sliding scale" approach to specific personal jurisdiction as it found no support in its precedents. Reaching back to the "seminal decision in *International Shoe* [*Co. v. Washington*, 326 U.S. 310 (1945)]," and applying "settled principles," the Court explained that "[i]n order for a state court to exercise specific jurisdiction"—as opposed to "general" or "all-purpose" jurisdiction—"the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." *BMS*, 137 S. Ct. at 1779-81 (citation and internal quotation marks omitted). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* 4.

9

(citation and internal quotation marks omitted). The California court's approach conflicted with this traditional rule, because it depended on the defendant's "unconnected activities" to make up for the absence of any link between the forum state and the out-of-state plaintiffs' claims. *See id.* at 1781.

Applying the traditional rule, the Supreme Court held that there was no personal jurisdiction as to claims asserted by plaintiffs who were not California residents, because those plaintiffs could allege no "adequate link" between their claims and the state of California. *Id.* Specifically, "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* California courts therefore could not assert jurisdiction over the nonresident plaintiffs' claims—even though those claims were similar to claims asserted by California residents, as to which the California courts did have jurisdiction based on Bristol-Myers Squibb's sales of Plavix to those plaintiffs in California. *See id.* "What is needed—and what [was] missing [in *Bristol-Myers Squibb*]—is a connection between the forum and the specific claims at issue." *Id.*

Ultimately the *BMS* decision did not disturb *Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). The Supreme did not change the law through its "straightforward application [of] settled principles of personal jurisdiction." *Bristol-Myers Squibb*, 137 S.Ct. 1173, *12. Nothing in the *Bristol-Myers Squibb* cases sets new precedent such that the Non-Missouri Defendants are entitled to a dismissal.

### B.  Missouri's Specific Jurisdiction Test Remains Good Law and Binding Precedent after *BMS*

The *BMS* decision did not change long-standing principles of specific jurisdiction and settled principles continue to control the analysis of specific jurisdiction. *BMS*, 137 S.Ct. at 1781. Under California's now-discarded approach, "the strength of the requisite connection between

the forum and the specific claims at issue" was "relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *BMS*, 137 S.Ct. at 1778-1779. The Court found that this approach contravened "settled principles regarding personal jurisdiction." *Id*. at 1781.

But nothing in *BMS* overrules (or undermines) the Eighth Circuit's longstanding test for specific jurisdiction: "[s]pecific jurisdiction," by contrast, is proper when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979-80 (8th Cir. 2015) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 187 L.Ed. 2d 624 (2014).

In addressing the minimum contacts necessary to create specific jurisdiction, the inquiry of whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (*quoting Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). The relationship must arise out of contacts that the defendant creates with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Additionally, a minimum contacts analysis examines the defendant's contacts with the forum state, rather than with persons who reside there. *See Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). While physical presence in the forum is not a prerequisite to jurisdiction (*Burger King*, 471 U.S. at 476), physical entry into the state—either by the defendant itself "or through an agent . . . or some other means—is certainly a relevant contact." *Walden v. Fiore*, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014); *citing Keeton*, 465 U.S. at 773-74.

Where, as here, a cause of action arises directly out of the defendant's contacts with the forum state, courts of that state have specific jurisdiction over that defendant. *Romak*, 384

11

F.3d at 984; *In re Genetically Modified Rice Litigation*, 576 F.Supp.2d 1063, 1069 (E.D. Mo. 2008) (court had personal jurisdiction over corporation based on subsidiary's jurisdictional contacts with Missouri).

Specific jurisdiction analysis varies case by case and turns on innumerable facts and actions. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571__U.S. __, 134 S.Ct. 1115, 1121 (2014) (quotations omitted); *BMS*, 137 S.Ct. at 1779. *See also Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 233 (Mo. 2010) ("In some cases, single or isolated acts by a defendant in a state, because of their nature and quality and the circumstances of their commission, provide sufficient minimum contacts to support jurisdiction for liability arising from those acts."). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *BMS*, 137 S. Ct. at 1780 (citations omitted).

A court analyzing personal jurisdiction must consider a variety of interests including "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice," but the "primary concern "is the "burden on the defendant." *Ibid* (citations omitted). The need for a case by case analysis is further illustrated by the *BMS* case.

It was undisputed that Bristol-Myers Squibb was incorporated in Delaware, headquartered in New York City and maintained substantial operations in New York and New Jersey. *BMS*, 137 S. Ct. at 1777-1778. The California Supreme Court found that California had

personal jurisdiction over the company because, among other things, it maintained substantial operations in California, including five offices that employed 164 people and 250 sales representatives in the state. *Id*. at 1778. It also had a small office in Sacramento to represent and advocate for the company in state government affairs. *Id*. The plaintiffs also alleged that Bristol-Myers Squibb's decision to contract with a California company, McKesson, to distribute the drug nationally provided a sufficient basis for personal jurisdiction. *Id*. at 1783.

The United States Supreme Court disagreed and reversed. The non-California plaintiffs did not allege that they obtained Plavix in California, suffered injury in California, or received treatment for their injuries in California. BMS sold Plavix in California and engaged in some business activities within the state, including running five research laboratory facilities but BMS, however, did not do any research or development leading to Plavix at those facilities. *Id*. at 1778.

In a "straightforward application" of the "settled principles of personal jurisdiction," in conjunction with the evidence in the substantial record, the Court specifically found that "BMS did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California…" *Id*. Research conducted by BMS in California in the form of clinical trials was also irrelevant as those trials did not involve Plavix ("Nor is it sufficient—or even relevant—that BMS conducted research in California on matters unrelated to Plavix. What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.") *Id*. at 1781. There was simply no connection between the forum and the specific claims at issue. *Id*. However, the Court adopted with approval the argument by BMS that personal jurisdiction for non-forum plaintiffs against all defendants in that litigation, including McKesson, existed in Delaware by virtue of BMS' incorporation in Delaware. *Id*., at 1783 ("Our decision does not

13

prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over BMS. BMS concedes that such suits could be brought in either New York or Delaware".) That is precisely what the present Plaintiffs have done and what Defendants now object to.

*BMS* is fully consistent with the longstanding requirement in Missouri. *See Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, (8th Cir. 2015); *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227 (Mo. 2010). The Supreme Court's decision simply deployed "settled principles" to reject California's practice of leveraging the "defendant's unconnected activities in the State" to concoct jurisdiction without regard to "the strength of the requisite connection between the forum and the specific claims at issue." *BMS*, at 1781. So, for example, the defendant's research and development in California of other drugs, "unrelated" to the drug alleged to have caused plaintiffs' injuries, did not meet the threshold. *Id*. Nor could jurisdiction over a nonresident defendant be justified by the company's blanket "*nationwide* marketing, promotion, and distribution" of the drug, *Bristol-Myers Squibb Co. v. Superior Court of California*, 377 P.3d 874, 888 (Cal. 2016) (emphasis added)—which, unlike here, was never specifically targeted to residents of the forum.

But the Court's "connection" (or nexus) analysis reaffirmed what has always been true for specific (or case-linked) jurisdiction: where a defendant's in-state conduct arises from a concerted effort "to serve . . . the market for its product," it is "not unreasonable to subject it to suit" for the product that caused the injury. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "What is needed," the Court explained in *BMS*, "is a connection between the forum and the specific claims at issue." *BMS* at 1781.

14

Here Plaintiffs allege that the Non-Missouri Defendants conspired and acted in concert with the Missouri Defendants in Missouri by controlling the "environmental expenditures, production practices, use of technology, policies including public relations and decision-making policies, and the deliberate withholding of information regarding the dangers of the toxic substances released by Defendants" in Missouri. Compl. at ¶¶ 43, 65. So there is no need to need to invoke "loose and spurious" general-jurisdiction concepts rejected in *BMS* at 1776, to establish specific jurisdiction over the Non-Missouri Defendants. Nothing in *BMS* prevents this Court from establishing specific jurisdiction over the Non-Missouri Defendants on these facts.

*Bristol-Myers Squibb* is entirely consistent with and, indeed, reinforces the controlling rules set forth in Missouri and this Circuit. In particular, the U.S. Supreme Court did not change the law through its "straightforward application of settled principles of personal jurisdiction." *Bristol-Myers Squibb*, 137 S. Ct. at 1783. To the contrary, the Court reaffirmed that due process requires only an "affiliation" or "connection" between the claims asserted in a given case and the forum in which they are asserted. *Id.* at 1780-81. There was no such "connection" on the facts in *Bristol-Myers Squibb*, but the Court said nothing about the far different fact patterns at issue in this case.

## C. Jurisdiction Over the Non-Missouri Defendants Satisfies Missouri's Long-Arm Statute

Missouri's long-arm statue authorizes personal jurisdiction over defendants who transact business, make a contract, commit a tort, or contract to insure a person or property within the state. MO. REV. STAT. §506.500.1. The Supreme Court of Missouri has interpreted this statute broadly, reading it to confer jurisdiction to the "full extent" allowed by the Due Process Clause. *State ex rel. Metal Serv. Cntr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. En Banc 1984) (exercising Missouri long-arm jurisdiction over foreign corporation). In Missouri, the

15

categories under the long-arm statute are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted to provide for jurisdiction to the full extent permitted by the Due Process Clause:

> To exercise personal jurisdiction over a nonresident defendant, a court must ordinarily determine (1) whether the defendant is subject to the forum state's long-arm statute, and (2) whether the exercise of personal jurisdiction would comport with due process. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004). Both the Eighth Circuit and the Missouri Supreme Court have noted that Missouri's long-arm statute confers jurisdiction to the extent allowed by the Due Process Clause. *See Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citing *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970)). Accordingly, I need only consider whether the exercise of jurisdiction in this case comports with due process . . .

*Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 WL 2199967, *2 (E.D. Mo. June 7, 2011) (No. 410-CV-2235-CDP) (not designated for publication) (declining jurisdiction in the absence of evidence suggesting contacts sufficient to support either general or specific jurisdiction, where only contacts with Missouri were having two Missouri companies as members, with no evidence of either the nature or frequency of defendant's contact with them, or that any harm would be felt in Missouri).

Defendants cite a number of cases to support their erroneous argument that Plaintiffs' claims do not fall under the Missouri long-arm statute because Defendants' conduct did not produce "actionable consequences" in Missouri. (Dkt. 176 at 11-13). Defendants distort the holdings of the cases they offer and moreover, the cases are no longer good law.

Citing three cases in support of their position, Defendants assert that the long- arm statute "*only* extends personal jurisdiction to putative defendants engaged in extraterritorial conduct that results in actionable consequences within Missouri." (Doc. 176 at p.12 (emphasis added), *quoting Cepia, LLC v. Universal Pictures Visual Programming Ltd.*, 177 F.Supp.3d 1129, 1142 (E.D. Mo. 2016), *Caveness v. Kruetz*, 1987 WL 8053, *3 (W.D. Mo. Mar. 6, 1987) (No. 86-

4593-CV-C-9) (not designated for publication), and *Naegler v. Nissan Motor Co*., 835 F. Supp. 1152, 1154 (W.D. Mo. 1993)). However, the cited cases do no support Defendants contentions.

Instead, *Cepia* provided first, that actionable consequences within Missouri are required only if *no* actions took place in Missouri, and second, that even if the only acts at issue are extraterritorial*,* "actionable consequence" does not mean that the injury must have occurred in Missouri, but only that the defendant "set in motion some course of action which was deliberately designed to *move into* Missouri and injure the plaintiff." *Cepia*, 177 F.Supp. 3d at 1140-41 (emphasis added). In the context of negligence claims, a plaintiff need not even show that the consequences are intentionally directed at Missouri. *Id*. The holding and rationale in *Cavaness* were the same. *Cavaness*, 1987 WL 8053 at *3. Finally, *Naegler* provided that actionable consequences within Missouri provide *one of multiple* bases for the accrual of jurisdiction under the long-arm statute—not the *sole* basis, as Defendants suggest. *Naegler*, 835 F.Supp. at 1156 (dismissing where defendants' conduct met *none* of the enumerated requirements).

More importantly, nor does the Supreme Court's opinion in *BMS* change the evaluation of specific jurisdiction here. In that case, out-of-state plaintiffs brought suit against the pharmaceutical manufacturer in California, although their claims had no nexus to California*. Bristol-Myers Squibb*, 137 S. Ct. at 1775. The only California-based activity was a contract between the defendant and a California company for national distribution of the product. *Id*. at 1783. The Court held that the contract with the California company was not sufficient to provide specific jurisdiction to the out-of-state plaintiffs. *Id*. at 1782. Here, by contrast, Plaintiffs have alleged and provided evidence of a multitude of contacts that provide this Court with jurisdiction over these Defendants.

17

Missouri courts consider five factors in determining whether a nonresident defendant's contacts with Missouri provide a basis for the exercise of jurisdiction, of which the first three factors are the most important: (1) The nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the connection of the cause of action to the contacts; (4) the interests of the forum state in the litigation; and (5) the convenience or inconvenience of the parties. *Romak*, 384 F.3d at 984; *Fleischli v. North Pole US,* LLC, 2013 WL 1965120, \*6 (E.D. Mo. May 10, 2013) (No. 4:12-CV-1618-CDP) (not designated for publication); *Precision Constr. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114, 118 (8th Cir. (E.D. Mo.) 1985) (directing exercise of jurisdiction where defendant had employees stationed in Missouri and sent employees into Missouri to settle controversy arising from product defects); *St. Louis Fed. Sav. & Loan v. Silverado Banking*, 626 F. Supp. 379, 382 (E.D. Mo. 1986) (under Missouri long-arm statute, Missouri court had jurisdiction over foreign savings and loan  that solicited, negotiated, and signed contract in Missouri and where relevant evidence could be found in Missouri as well as other states). With respect to the third factor, jurisdiction is proper where the cause of action arises from or is connected to the defendant's contacts within Missouri. *Romak*, 384 F.3d at 984; *Precision Construction*, 765 F.2d at 118-19.

In addition, Federal courts in Missouri have held that the following types of evidence are sufficient to establish the necessary contacts for specific jurisdiction: visiting Missouri to conduct business discussions, traveling to Missouri on as few as three occasions to participate in business meetings, entering Missouri for defendant's financial benefit, or entering into an employment agreement with a Missouri resident. *In re Genetically Modified Rice Litig'n*, 576 F.Supp.2d at 1071; *BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 429 F. Supp. 2d 1179, 1182 (E.D.

Mo. 2006) (Perry, J.); *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 913-14 (8th Cir. 2014). *Fleischli*, 2013 WL 1965120 at *2, n.2, *6, *9.

Here, Defendants' Missouri contacts were far more extensive, substantive, and long-lasting than in these cases. This conduct was itself sufficient to confer personal jurisdiction on Defendants, even without a single other contact with Missouri—and Defendants also had multitudinous other contacts with Missouri: they negotiated contracts that were filtered through Missouri and that were related to activities that caused Plaintiffs' damages; they made multiple visits to Missouri related to activities that caused Plaintiffs' damages—including by their "key decision makers"; they entered into employment agreements signed in Missouri; they held majority ownership of Missouri companies, on whose Board of Directors they controlled seats; and they divested substantial assets of Missouri companies.

Missouri courts have established that mere telephone calls, or a single visit to Missouri, are sufficient contacts to satisfy the Missouri's long-arm statute's requirements to exercise jurisdiction over foreign defendants. *Watlow Elec. Mfg. Co. v. Sam Dick Indus., Inc.*, 734 S.W.2d 295, 297-98 (Mo. Ct. App. 1987) ("single meeting [in Missouri by employee of defendant] is sufficient to satisfy the transaction of business requirement of Section 506.500."). Here, Defendants' Missouri contacts detailed above extend far beyond mere telephone calls, isolated visits, or other less-significant contacts that have been held sufficient to support the exercise of personal jurisdiction over non-resident defendants. Defendants are clearly subject to personal jurisdiction here, and the Motion should be denied.

In contrast to the claims asserted in *BMS*, Plaintiffs' claims here are "affiliat[ed]" with and "connect[ed]" to this forum. 137 S. Ct. at 1780-81. The suit is based on the Non-Missouri Defendants' scheme to " fail to adequately control the toxic environmental releases from the La

19

Oroya Complex and related operations and facilities that Defendants knew were being released or transported to 'properties on which the minor plaintiffs have in the past or continue to reside, visit or use. . ." Compl. ¶¶ 66. An integral part of that wrongful scheme was the complete ownership and control over the Missouri Defendants exerted by the Non-Missouri Defendants in New York.

### D.  *BMS* **Warrants Denial of Defendants' Motion**

*BMS*, of course, only dealt with specific personal jurisdiction. There is no question that this Court has both general and specific personal jurisdiction over Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., Marvin K. Kaiser, Theodore P. Fox III., Jerry Pyatt, Jeffrey L. Zelms (hereinafter the "Missouri Defendants"). Moreover, Doe Run Resources Corporation was the company that controlled Doe Run Peru from Missouri. As such, the Missouri Defendants are but one link in a chain of ownership and control, reaching up to Defendant Ira Rennert, of Doe Run Peru.

Under Missouri's concert of action or agency theory of jurisdiction, the Non-Missouri Defendants are subject to jurisdiction due to their concert of action with Missouri entities and nothing in *BMS* is to the contrary. Rather, *BMS* specifically cites to this theory of jurisdiction with approval, at least in the context of specific personal jurisdiction. *Id*. at 1783 ("In this case, it is not alleged that BMS engaged in relevant acts together with McKesson in California."). However, these allegations are made against the Non-Missouri Defendants in the present matter.

Further, Plaintiffs allege that significant decisions were made in New York by the Non-Missouri Defendants that were crucial to daily operations in Missouri and Doe Run Peru, including the claims at issue. Interpreting *BMS*, two federal courts recently held that "Plaintiff has established a prima facie case that Defendants' clinical trials in California were part of the "but for" cause of her injuries sufficient to confer jurisdiction." *Dubose v. Bristol-Myers Squibb*

*Co.*, 2017 U.S. Dist. LEXIS 99504, *13, 2017 WL 2775034 (N.D.Cal. June 27, 2017); *Cortina v. Bristol-Myers Squibb Company, et al.*, 2017 WL 2793808 at *4 (N.D. Cal. Jun. 27, 2017). Although not binding on this Court, the decisions in *Cortina* and *Dubose* provide a cogent post-BMS specific jurisdiction analysis. In ruling on the defendants' motions to quash for lack of personal jurisdiction, the courts in *Dubose* and *Cortina* denied the defendants' motion and held that the court could exercise jurisdiction over the defendants.

The *Debose* court noted there was no bright line rule or "arbitrary cut-off" for the exercise of personal jurisdiction and examined in detail both the facts from other cases to further illuminate its analysis of the specific facts at issue in the case before it. The court addressed *BMS* and found that the facts before it and the facts in *BMS* were different and found it distinguishable. Ultimately the court did not deviate from *International Shoe's* three prong test and prior Supreme Court precedent, including *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). In short, nothing in *BMS* warrants the dismissal of Plaintiffs' claims against the Non-Missouri Defendants. Instead, *BMS* reinforces the continued viability of "settled principles of personal jurisdiction."

### E. The Alter Ego Theory Imposes Jurisdiction Over the Non-Missouri Defendants

In addition to the other bases for jurisdiction that exist here, the Court also has jurisdiction over the non-resident Defendants under the alter ego theory.

The Eighth Circuit has established that a corporate parent is subject to jurisdiction in Missouri when it acts as the alter-ego of its Missouri subsidiary. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011); *Epps v. Stewart Info. Services Corp.*, 327 F.3d 642, 648–49 (8th Cir. 2003); *Clockwork IP, LLC v. Clearview Plumbing & Heating Ltd.*, 127 F. Supp. 3d 1020, 1030 (E.D. Mo. 2015); *In re Genetically Modified Rice Litig.*, 576 F. Supp. 2d 1063, 1072 (E.D. Mo. 2008). "Personal jurisdiction can be based on the

activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Epps*, 327 F.3d at 648–49. In such cases, "the subsidiary's contacts are those of the parent corporation's, and due process is satisfied." *Id.* at 649. The Eighth Circuit has extended application of the alter ego doctrine to dominant shareholders or directors. *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975). Thus, if a corporation is the alter ego of a dominant, non-resident individual, the corporate veil may be pierced and jurisdiction exercised over that individual.

Control sufficient to pierce the corporate veil and permit the exercise of jurisdiction can be evidenced by the following factors, among others: (1) the parent dictates the subsidiary's policies; (2) failure to follow corporate formalities; or (3) the corporate form is used to promote fraud or illegality, (4) other evidence that the corporation is merely a sham and does not operate independently of the parent. *Id.*; *Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. App. E.D. 1986); *Camelot Carpets, Ltd. v. Metro Distributing Co.*, 607 S.W.2d 746, 750 (Mo. App. E.D. 1980).

Although discovery is ongoing in this case, Plaintiffs nonetheless have made an ample showing that Defendant Rennert and his Renco entourage owned and controlled Doe Run Peru and the various intermediary companies in between, including Missouri companies Doe Run Resources, DR Acquisition, and Doe Run Cayman Holdings. These facts are sufficient to exercise jurisdiction over the Non-Missouri Defendants.

As discussed herein and Plaintiffs' Opposition to the Motion to Dismiss pursuant to international comity, Dkt. 180, pages 1-11 (incorporated herein by reference), Ira Rennert is at

the top of the ownership chain, owning all corporate defendants and ultimately Doe Run Peru and the La Oroya Complex. *See* Exhibit A, Form 10-K filed by the Doe Run Resources Corporation, for the fiscal year ended October 31, 1998. Defendant Rennert, the sole Director of Renco and Chairman of the Board of Renco and Missouri company Doe Run Resources, established a series of trusts for himself and his family which collectively own 100% of Renco and the rest of the Corporate Defendants, as well as the La Oroya Complex. *See* Exhibit B, Unanimous Written Consent of Shareholders of The Renco Group, Inc, dated March 19, 2012. Rennert and Renco's ownership and control of the La Oroya Complex and Doe Run Peru is germane to the jurisdictional analysis of the Non-Missouri Defendants, because Rennert and the other Non-Missouri Defendants used Missouri companies, employees, and contacts to perpetuate a wrongdoing – namely, purposefully removing funds that were intended to be used to make environmental upgrades at the La Oroya Complex, and instead, using them to fill their pockets.

Rennert and the Non-Missouri Defendants, used their Missouri corporations (the Missouri Defendants) to acquire the La Oroya Complex. *See* Exhibit C, Stock Transfer Agreement. Moreover, Rennert and the Non-Missouri Defendants set up policies by which Rennert required that he personally approve expenditures at the La Oroya Complex, to further his control of the finances of those operations, and insure profits for himself and the other Defendants. *See* Exhibit D, The Doe Run Resources Corporation Spending Authorization Procedure. Under this procedure, all authorizations for expenditures (AFEs) for Doe Run Peru were to be forwarded to St. Louis for review and approval by Doe Run Resources Corporation's Corporate Controller, Vice President of Sales, Chief Financial Officer, Vice Chairman, President and CEO, and Renco's Chief Executive Office. *Id*. Moreover, "the deadline for receipt of AFEs

23

by the St. Louis office is ten business days preceding the next regularly scheduled visit of Renco's Chief Executive Officer." *Id.*

Through this elaborate scheme, Rennert used his ironclad control over his Missouri companies and employees to manage all operations at the La Oroya Complex and to prevent the implementation of desperately needed upgrades to the facility. Through these means, Rennert generated millions of dollars for his personal benefit while exhibiting flagrant disregard for the health and safety of La Oroya residents, including the Plaintiff children. Based on this course of conduct, it is clear that jurisdiction exists over the non-resident Defendants under the alter ego theory.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny the Non-Missouri Defendants' motion to dismiss and for such other and further relief the Court deems just and proper.

Respectfully submitted,

Dated: October 2, 2017

**NAPOLI SHKOLNIK PLLC**

By: /s/ Hunter Shkolnik
Hunter Shkolnik, #2031458NY
Paul J. Napoli, #251314NY
360 Lexington Avenue, 11th Floor
New York, NY, 10017
(212) 397-1000
hunter@napolilaw.com
pnapoli@napolilaw.com
rgitelman@napolilaw.com

**GORI, JULIAN & ASSOC., P.C.**

By: /s/ D. Todd Matthews
D. Todd Matthews, MO Bar 52502
Randy L. Gori, MO Bar 47619
156 N. Main St.
Edwardsville, IL 62025
(618) 659-9833
todd@gorijulianlaw.com
randy@gorijulianlaw.com

**RODRIGUEZ TRAMONT + NUÑEZ, P.A.**

By: /s/ Frank R. Rodriguez
Frank R. Rodriguez, #348988FL

24

Paulino A. Nuñez, #814806FL
255 Alhambra Cir., Suite 1150
Coral Gables, FL 33134
(305) 350-2300
frr@rtgn-law.com
pan@rtgn-law.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 2, 2017, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

Dated: October 2, 2017

_____/s/ Patrick J. Lanciotti_____